


## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Zachariah Laboo, | ) | **Docket No.: 2017-01-0335** |
|    **Employee,** | ) | |
| **v.** | ) | |
| **Koch Foods, LLC,** | ) | **State File No.: 9211-2017** |
|    **Employer,** | ) | |
| **And** | ) | |
| **Arch Insurance Company,** | ) | **Judge Thomas Wyatt** |
|    **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING TEMPORARY DISABILITY BENEFITS

This matter came before the Court on November 14, 2017, on Mr. Laboo's Request for Expedited Hearing. The sole issue is whether Koch Foods' termination of Mr. Laboo negated his right to temporary partial disability benefits. For the reasons set forth below, the Court finds Mr. Laboo is not entitled to the requested benefits.

### History of Claim

On February 3, 2017, Mr. Laboo tore the ulnar collateral ligament in his right thumb when he entangled it in a chain while lowering a door in Koch's shipping department. He had worked at Koch two months when this injury occurred. Koch accepted the injury as compensable and offered Mr. Laboo a panel from which he selected hand surgeon Dr. Mark Brzezienski. Dr. Brzezienski surgically repaired Mr. Laboo's thumb on March 13.

Dr. Brzezienski placed restrictions on the use of Mr. Laboo's right hand and arm following surgery. Koch accommodated those restrictions such that Mr. Laboo did not experience a wage reduction. However, shortly after surgery, Mr. Laboo began to accumulate points under Koch's attendance policy for absences, tardiness, and leaving

1

work early.[1]  On February 26, Mr. Laboo's supervisor, James Talley, had him sign a Corrective Action Notice, which provided as follows: "This is to inform Zachariah that he has reached a total of 6-1/2 pts[2] and that any further pts within 45 days will result in termination. *** Zachariah must adhere to attendance policy and not have any unexcusable tardies, leave early, absents within the next 45 days." (Ex. 9.)

Mr. Laboo received two points for arriving at work more than an hour late on April 14 and 17.[3]  Mr. Talley completed a Corrective Action Notice on April 17 indicating that "Zachariah will be terminated according to the attendance policy for exceeding points allowed, as he is currently at 8-1/2 points." (Ex. 11.)  However, the evidence established that David Holmes, and not Mr. Talley, had the authority to terminate Mr. Laboo.

On April 18, Mr. Holmes met with Mr. Laboo and Mr. Talley to discuss Mr. Laboo's attendance history.   Mr. Holmes testified that Mr. Laboo began the meeting by accusing him of having already made the decision to fire him.  Mr. Holmes told Mr. Laboo that was not true but he needed to inquire about the circumstances surrounding the absences.  Mr. Holmes described Mr. Laboo as discourteous and animated during the meeting.  He claimed that Mr. Laboo interrupted him constantly, did not answer his questions adequately, and accused him of conducting a "witch hunt."

Mr. Holmes testified that, while he did not feel physically threatened by Mr. Laboo, he decided during the meeting that Mr. Laboo needed "to cool down."  Thus, he ended the meeting and suspended Mr. Laboo for seven days.  Mr. Holmes prepared a Corrective Action Notice following the meeting that documented his decision to suspend Mr. Holmes for "[e]xcessive attendance-points . . . and insubordination during meeting with HR manager." (Ex. 15.)

Mr. Laboo gave a different account of the meeting.  He agreed he told Mr. Holmes that he felt Mr. Holmes had already decided to fire him, and testified he did not trust Mr. Holmes' response to the contrary since Mr. Holmes told him he needed to "do some more digging."  Mr. Laboo testified he was calm and unthreatening during the meeting and did

---

[1] Koch's policy did not assess points against an employee for absences due to treatment for a work injury.

[2] David Holmes, Koch's human resources manager, testified the attendance policy authorized Koch to terminate an employee after an accumulation of seven points.  Koch did not submit the attendance policy itself, but provided a document signed by Mr. Laboo acknowledging that he understood "that if I am found to be unable to . . . display attitudes or behaviors that are not consistent with Koch Foods expectations [then] I might not be considered for employment."

[3] The calendar Koch admitted into evidence documented that Mr. Laboo had numerous absences and incidents of tardiness and leaving early between February 26 and April 14. (Ex. 12.) However, evidence did not establish that Koch assessed Mr. Laboo points for those incidents.  Mr. Laboo admitted a note into evidence that established he attended a physical therapy session for his work injury on April 17. (Ex. 5.)

2

not raise his voice or use profanity. However, he stated that, at one point, he looked at Mr. Talley and asked him, "he's firing me, isn't he?" Mr. Laboo denied using the term "witch hunt" and that Mr. Holmes told him the suspension was for seven days. He stated he left the meeting thinking Mr. Holmes would fire him. Mr. Laboo did not testify that Mr. Holmes was threatening or discourteous to him.[4]

Because he believed that Koch would fire him, Mr. Laboo contacted Chattanooga State Community College and made an appointment on April 25 to take tests and investigate financial aid opportunities. At some point, Mr. Holmes contacted Mr. Laboo by telephone and they agreed to meet at 11:00 a.m. on April 25 to discuss Mr. Laboo's continued employment at Koch. Mr. Laboo testified that Mr. Holmes told him to call if he could not make the meeting on April 25.[5]

Mr. Laboo testified that he left a voice mail for Mr. Holmes on April 24 to tell him he could not attend the meeting the next day. He left a similar voice mail for Mr. Holmes the next morning. Mr. Holmes testified he did not check his voice mails until after Mr. Laboo failed to appear for the scheduled meeting. He stated he found one message, left approximately an hour before the scheduled meeting, indicating Mr. Laboo would not attend the meeting because he was taking a test. Mr. Laboo and Mr. Holmes both testified they unsuccessfully attempted to contact each other after April 25.

Mr. Holmes testified Mr. Laboo's failure to attend the April 25 meeting was the "last straw," and he decided to terminate Mr. Laboo that day. Mr. Holmes prepared a Corrective Action Notice on April 25 that listed attendance deficiencies and his failure to attend the post-suspension meeting as reasons for Mr. Laboo's termination. The Separation Notice, dated April 23, cited attendance deficiencies as the only reason for Mr. Laboo's termination. Mr. Holmes testified the April 23 date on the Separation Notice was a mistake.

Mr. Laboo has not earned any income since his termination, although he attempted to locate work at a manufacturing plant and through an employment agency. He seeks temporary partial disability benefits because he has remained under restrictions for his right-thumb injury from his termination to the present. Koch contended it had full-time work available within Mr. Laboo's restrictions; thus, his termination for cause negated

---

[4] Koch submitted Mr. Talley's written account of the April 18 meeting into evidence. (Ex. 7.) It generally agreed with Mr. Holmes' account.

[5] The evidence did not indicate whether Mr. Laboo knew about the appointment at Chattanooga State at the time he spoke to Mr. Holmes.

any right to temporary disability benefits he might otherwise have. Mr. Laboo countered that Koch's given reasons for his termination were pre-textual.[6]

## Findings of Fact and Conclusions of Law

The Workers' Compensation Appeals Board held as follows in *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8-9 (Dec. 11, 2015):

> [e]ven though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules[.] Thus, a termination due to a violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits, provided the termination was related to the workplace violation[.] When confronted with such a case, courts must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules[."] An employer will not be penalized for enforcement of a policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal[.]"

(Citations omitted.)

Thus, the burden falls on Mr. Laboo to establish that he will likely prevail at a hearing on the merits in showing that Koch terminated him for reasons that do not constitute misconduct under established or ordinary workplace rules or expectations. *See generally McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). After reviewing the evidence, the Court holds that Mr. Laboo did not meet his burden.

During the hearing, Mr. Holmes did not testify specifically that Mr. Laboo accumulated enough points for termination under the formal attendance policy but instead stated that was likely the case.[7] However, the evidence indicated Koch had expectations about work attendance that Mr. Laboo did not meet during his six-month tenure with the company. Koch made Mr. Laboo aware of its dissatisfaction with his attendance history by notifying him when he received points, issuing him a final warning

---

[6] Mr. Laboo did not specify exactly why he felt Koch terminated him. He testified that Mr. Holmes seemed not to believe that his injury occurred at Koch and, on one occasion, said the claimed mechanism of the injury was a "neat trick."

[7] Mr. Talley's February 26 Corrective Action Notice gives the impression that some or all of Mr. Laboo's attendance points would disappear if he did not receive additional points for the next forty-five days.

about his attendance deficiencies, and telling him in-person after Mr. Talley believed Mr. Laboo had accumulated more than seven points. Mr. Laboo's accusation that Mr. Holmes had already decided to terminate him for attendance deficiencies prior to and after the April 18 meeting, indicated Mr. Laboo was cognizant of Koch's dissatisfaction with his attendance.

Additionally, the Court accepts Mr. Holmes' testimony that Mr. Laboo's conduct during the April 18 meeting thwarted Koch's rightful inquiry into Mr. Laboo's attendance deficiencies. Finally, the Court finds that Koch reasonably considered Mr. Laboo's failure to attend the April 25 meeting to indicate Mr. Laboo's lack of resolve to take the necessary steps to preserve his continued employment. When taken as a whole, the Court holds that Koch had cause to terminate Mr. Laboo's employment for violation of valid workplace expectations.

Further, the Court disagrees with Mr. Laboo that the decision in *Devereux v. UPS,* No. 2010-00710-WC-R3-WC, 2011 Tenn. LEXIS 199, at *10 (Workers' Comp. Panel Mar. 8, 2011), precludes the Court's consideration of any alleged reason for Mr. Laboo's termination other than his attendance history in deciding this claim. In *Devereux,* the panel held the employer could not justify its termination by establishing workplace violations in addition to the reason listed on its termination notice. Here, Koch records document that, during the process of considering whether to terminate Mr. Laboo, Mr. Holmes factored Mr. Laboo's conduct in the April 18 meeting and his failure to attend the meeting on April 25 into his final decision to terminate Mr. Laboo. For that reason, the Court holds the facts here are distinguishable from those in *Devereux.*

In view of the above, the Court holds that, had Mr. Laboo not given Koch cause to terminate him, he could have performed work at Koch within his restrictions and maintained his regular wages. Thus, the Court denies Mr. Laboo's claim to temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Laboo's claim for temporary disability benefits is denied.

2. This matter is set for a Status Hearing on **February 8, 2017, at 1:00 p.m. (Eastern Time).** The parties must call (423) 741-3061 or (toll-free) 747-1721 to participate in the Status Hearing. Failure to call in at the scheduled time may result in a determination of the issues without the absent party's participation.

**ENTERED November 21, 2017.**

**THOMAS WYATT, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits: The Court admitted the following documents as exhibits during the Expedited Hearing:

1. Wage Statement;
2. Affidavit of David Holmes;
3. Medical records compilation;
4. February 21, 2017 letter from Erlanger (for identification only—the Court sustained Koch's hearsay objection);
5. April 17, 2017 from Jennifer D. Walker (over Koch's hearsay objection);
6. Call records from Mr. Laboo's cell phone;
7. Notes of James Talley;
8. Absence/Point Report dated February 24, 2017;
9. Corrective Action Notice dated February 26, 2017;
10. Absence/Point Report dated April 17, 2017;
11. Corrective Action Notice dated April 17, 2017;
12. Attendance calendar;
13. Absence/Point Report dated January 12, 2017;
14. Absence/Point Report dated February 24, 2017 (copy given to Mr. Laboo);
15. Corrective Action Notice dated April 18, 2017;
16. Corrective Action Notice dated April 25, 2017;
17. Separation Notice;
18. Notes of David Holmes;
19. Employment Acknowledgment form signed by Mr. Laboo;
20. Acknowledgment of Receipt of Handbook signed by Mr. Laboo; and
21. Time card.

Technical record: The Court considered the following filings and marked them as the Technical record during the Expedited Hearing:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Employer's Position Statement;
4. Request for Expedited Hearing;
5. Employer's Objection to Request for Expedited Hearing;
6. Employee's Response to Objection to Request for Expedited Hearing;
7. Employer's Reply to Employee's Response; and
8. Employee's Brief.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on November 21, 2017.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Lew Belvin, Employee Attorney | | X | Lew.belvin@mcmahanlawfirm.com; tim@mcmahanlawfirm.com |
| Benjamin Reese, Employer's Attorney | | X | Ben.reese@leitnerfirm.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov